**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

KIEWIT CONSTRUCTORS, INC.,

Plaintiff,

v.

BUILDING, CONCRETE, EXCAVATING & COMMON LABORERS UNION LOCAL NO. 731, OF GREATER NEW YORK,

Defendant.

Case No. 08-CV-3946 (LAP)

Civil Action

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S COMPLAINT AND APPLICATION TO STAY OR VACATE ARBITRATION, AND IN SUPPORT OF DEFENDANT'S CROSS-MOTION TO COMPEL ARBITRATION**

**BISCEGLIE & DEMARCO, LLC**
Angelo R. Bisceglie, Jr. (ARB-9251)
365 Rifle Camp Road
West Paterson, NJ 07424
(973) 742-8900
Attorneys for Defendant

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................. ii

PRELIMINARY STATEMENT.................................................................. 1

FACTUAL BACKGROUND .................................................................. 1

POINT I: AS A PARTY TO THE CBA, KCI IS BOUND BY THE ARBITRATION PROVISIONS THEREOF INCLUDING THE REQUIREMENT THAT ANY APPLICATION TO STAY AN ARBITRATION MUST BE MADE WITHIN 20 DAYS OF AN ARBITRATION DEMAND.................................................................. 4

POINT II: THE ISSUE AS TO WHICH LOCAL 731 SEEKS ARBITRATION IS AN ISSUE WHICH, UNDER THE CBA AND UNDER FEDERAL POLICY AND ESTABLISHED LAW, MUST BE SUBMITTED TO ARBITRATION......................... 7

CONCLUSION.................................................................. 11

# TABLE OF AUTHORITIES

## CASES

A. Seltzer and Co., Inc. v. Livingston, 253 F. Supp. 509 (S.D.N.Y. 1966)...................... 9

Bloomingdale's, Inc. v. Service Employees International Union, Local 32E, AFL-CIO, 1998 U.S.Dist. LEXIS 413 (S.D.N.Y. 1998)...................................................4,8

Directors Guild of America, Inc. v. National Broadcasting Company, Inc., 1976 U.S. Dist. LEXIS 14522 (S.D.N.Y. 1979)........................................................... 9

Eastern Cleaning Services, Inc. v. Service Employees International Union, 1980 U.S. Dist. LEXIS 10068 (S.D.N.Y. 1980)..........................................................10

Farrell v. Ignatius, 283 F. Supp. 58 (S.D.N.Y. 1968)............................................4

Ferndale Corporation v. Schulman Urban Development Associates, 758 F. Supp. 861 (S.D.N.Y. 1990)..........................................................................6

In the Matter of Aetna Casualty & Surety Company v. Jones, 188 A.D.2d 597, 591 N.Y.S.2d 491 (App. Div. 1992)..........................................................5,6

In the Matter of the Arbitration between The Hartford Insurance Company and Henderson Martin, et al., 16 A.D.3d 149, 791 N.Y.S.2d 83 (App. Div. 2005)................................5

In the Matter of Bonnie Pers et al. v. Hanover Insurance Company, 225 A.D.2d 313, 639 N.Y.S.2d 7 (App. Div. 1996).............................................................6

Schlesinger v. Councilman, 420 U.S. 738, 95 S. Ct. 1300 (1975)................................4

Sperry Systems Management v. Engineers Union, 371 F. Supp. 198 (S.D.N.Y. 1974).........9

Star Pharmacy, Inc. v. Roberts, 1977 U.S. Dist. LEXIS 13659 (S.D.N.Y. 1977).............8,9

United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S. Ct. 1343 (1960)...............................................................................10

United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S. Ct. 1347 (1960)........................................................................8,10

Vittoria Corporation v. New York Hotel and Motel Trades Council, 30 F. Supp. 2d 431 (S.D.N.Y. 1998)........................................................................5,8

Warren v. Arzt, 18 F.R.D. 11 (S.D.N.Y. 1955)..................................................4

Zubak v. Meyer, 1998 U.S. Dist. LEXIS 8843 (S.D.N.Y. 1998)........................................ 8

STATUTES

N.Y. CPLR § 7503(c)........................................................................................ 5,6

## PRELIMINARY STATEMENT

This memorandum of law is submitted on behalf of defendant Building, Concrete, Excavating & Common Laborers Union Local No. 731, of Greater New York ("Local 731") (a) in opposition to the application by Kiewit Constructors, Inc. ("KCI") to stay and vacate an arbitration (the "Arbitration") that Local 731 commenced against KCI, and (b) in support of Local 731's cross-motion to compel such Arbitration.

As set out in detail below: KCI is a signatory to a collective bargaining agreement ("CBA") with Local 731. The CBA expressly provides for arbitration and further provides that any party seeking to stay arbitration must do so within twenty (20) days: KCI has not complied with this requirement of the CBA, but has made this application approximately seventy-five (75) days after service of Local 731's arbitration demand. We respectfully submit that given these undisputed facts, KCI's application must be denied, and Local 731's cross-motion must be granted (See Point I).

Moreover, even if KCI's application for a stay were timely -- which it is not -- the matter as to which Local 731 has sought arbitration is a matter which, under the CBA, and under established federal law and policy, must be submitted to, and decided by, an arbitrator rather than a court (See Point II). For this reason, as well, we respectfully submit that KCI's application must be denied and Local 731's cross-motion must be granted.

## FACTUAL BACKGROUND

The relevant facts, all of which are undisputed, are set out in the documents attached as exhibits to the Affidavit of Mark I. Silberblatt, Esq. (the "Silberblatt Affidavit"), submitted herewith; additionally, certain other facts have been admitted by KCI in the affidavit of Michael

F. Norton (the "Norton Affidavit"), which KCI submitted in support of its application. Briefly stated, these facts are as follows.

On July 12, 2007, KCI became a signatory to the CBA. (Norton Affidavit, ¶3). The CBA contained provisions intended to insure that Local 731's members would receive the benefit of the CBA by which they were bound, and that the employer signatories thereto would not be able to evade their obligations thereunder.

Thus the CBA expressly provided that:

> If the Employer covered by this collective bargaining agreement ***or any such principal owner or principal forms*** or acquires by purchase, merger or otherwise, an interest, whether by ownership, stock, equitable or managerial, in another company, corporation, partnership, or any other business entity, including joint venture and sole proprietorship, performing bargaining unit work within this jurisdiction, this collective bargaining agreement shall cover such other operation.

(**Exhibit 1**,[1] pg 4) (emphasis added). Furthermore, it was agreed that

> The Employer shall not enter into a contract with any other person or entity, to perform bargaining unit work on the same job site, unless such other person or entity has signed a collective bargaining agreement with the Union on work traditionally performed by members of Local 731 or is a member of an Association which has signed a collective bargaining agreement with the Union and has authorized such Association to negotiate and execute a collective bargaining agreement on its behalf.

(**Exhibit 1**, pg 5).

The CBA also expressly provided that if a dispute arose between the parties, such dispute was to be resolved by arbitration, which was the agreed upon means of "settling disputes . . . as to any claims of violation of this Agreement or of any dispute that may arise in connection therewith or for construing the terms and provisions thereof." (**Exhibit 1**, pg 10). Moreover, the CBA further provided that if any party intended to challenge an arbitration demand, "[a]n

---

[1] "Exhibits" refer to the exhibits attached to the Silberblatt Affidavit.

application to stay arbitration must be made by the party served within twenty days after service upon him of the notice or demand, or he shall be so precluded." (**Exhibit 1**, pg 11).

On or about January 14, 2008, Local 731 notified KCI that a dispute had arisen between them by reason of the fact that Mass. Electrical Construction Co. ( "MEC"), a company wholly owned by KCI's owner, Kiewit Construction Company ( "KCC"), had hired a subcontractor, Aldridge Electrical, to perform bargaining unit work that was the subject of the CBA, inasmuch as it was "using electricians to perform excavation work and core drilling (and then pouring concrete with anchor bolts)" at the location of 95 Southbound, New England Thruway, Pelham Parkway West, Bronx, New York.[2] (**Exhibit 2**). At this time, Local 731 notified KCI that "[i]n the event you fail to take corrective action, we will be compelled to file for arbitration and to seek all lost wages, fringe benefits, as well as attorney fees." (**Exhibit 2**).

When KCI failed to take any corrective action, Local 731 served KCI with an arbitration demand (the "Arbitration Demand"). (**Exhibit 3**). In its Arbitration Demand, Local 731 specifically notified KCI that, consistent with the CBA's provisions, KCI had 20 days in which to file for a stay of arbitration. (**Exhibit 3**).

An arbitration hearing was scheduled for March 5, 2008. (**Exhibit 4**). KCI did not file a timely application to stay arbitration; instead, its representative, Frank P. DiMenna, of the General Contractors Association of New York, Inc. ("GCA"), sought a new date for the arbitration hearing. (**Exhibit 5**). The arbitration hearing was rescheduled for the afternoon of March 5, 2008 (**Exhibit 6**), and thereafter, the hearing was rescheduled twice -- first to April 29, 2008 (**Exhibit 7**), and then to May 1, 2008 (**Exhibit 8**). All of these adjournments were in response to requests made by Mr. DiMenna as KCI's representative. (**Exhibit 9**). At no time

[2] The fact that this work was contracted for by MEC, rather than by KCI, seems curious in light of the fact that, as KCI has admitted, "KCI performs heavy general construction work, such as tunnels, bridges, and highways in New York City, NY" and "MEC is an electrical contractor [which] performs work nationally." (Norton Affidavit, ¶11).

did KCI take the position that Local 731's grievance was not arbitrable, and at no time, prior to its present application to this Court, did KCI seek a stay of arbitration.

On April 28, 2008, 75 days after the Arbitration Demand had been served, and three days before the scheduled arbitration hearing, KCI filed the present application to the Court to vacate and stay the arbitration. KCI's application was made by an order to show cause accompanied by an affidavit and a memorandum of law. No formal complaint was filed or served by KCI, which by a handwritten emendation labeled its memorandum of law a "complaint."[3]

## POINT I

## AS A PARTY TO THE CBA, KCI IS BOUND BY THE ARBITRATION PROVISIONS THEREOF, INCLUDING THE REQUIREMENT THAT ANY APPLICATION TO STAY AN ARBITRATION MUST BE MADE WITHIN 20 DAYS OF AN ARBITRATION DEMAND

It is undisputed, and KCI has admitted, that KCI is a party to the CBA. (Norton Affidavit, ¶3). As such, KCI agreed to arbitration

> for the purpose of settling disputes between any of the Employers and Local 731 or any of the Employers and any of the workers covered by this Agreement as to any claims of violation of this Agreement or of any dispute that may arise in connection therewith or for construing the terms and provisions thereof[.]

(**Exhibit 1**, pg 10).

Contrary to KCI's argument to this Court, Local 731 is not seeking arbitration against MEC based on some "alter ego" theory, and for that reason, the cases that KCI has cited in its brief -- specifically the decisions in Bloomingdale's, Inc. v. Service Employees International

[3] Although this proceeding is arguably defective by reason of KCI's failure to file and serve a formal complaint in compliance with F.R. Civ. P. Rule 3 (see Farrell v. Ignatius, 283 F. Supp. 58, 59 (S.D.N.Y. 1968); Doe v. Rosenberry, 152 F. Supp. 403, 405 (S.D.N.Y. 1957); and Warren v. Arzt, 18 F.R.D. 11, 13 (S.D.N.Y. 1955)), in light of the Supreme Court's decision in Schlesinger v. Councilman, 420 U.S. 738, footnote 5, 95 S. Ct. 1300, footnote 5 (1975), we will assume that the Court has subject matter jurisdiction to hear and decide KCI's application and Local 731's cross-motion.

Union, Local 32E, AFL-CIO, 1998 U.S. Dist. LEXIS 413 (S.D.N.Y. 1998) and Vittoria Corporation v. New York Hotel and Motel Trades Council, 30 F. Supp. 2d 431 (S.D.N.Y. 1998) -- are not on point. Rather, Local 731 has sought arbitration ***against KCI***, based on specific provisions of the CBA (including, in particular, the provision which makes subject to the CBA, work performed by or for a company (such as MEC) under common ownership of a company which is a signatory to the CBA (such as KCI)). This, we respectfully submit, is a "claim of violation" of the CBA, or is a dispute "in connection with [the CBA]" or "the term and provisions thereof," which KCI expressly agreed to arbitrate.

Moreover, as a party to the CBA, KCI is also bound by its provision requiring that any "application to stay arbitration must be made by the party served ***within twenty days*** after service upon him of the notice or demand, ***or he shall be so precluded***." (**Exhibit 1**, pg 11) (emphasis added). This is consistent with New York law, CPLR § 7503(c), which specifically states that "[a]n application to stay arbitration must be made by the party served ***within twenty days*** after service upon him of the notice or demand, ***or he shall so be precluded***." N.Y. CPLR § 7503(c) (emphasis added).

New York courts have strictly enforced this 20 day time period limitation to make a motion to stay the arbitration. "The 20-day limit is construed as a period of limitation, and the courts have no discretion to waive or extend the statutory period . . . ***Where the application to stay is untimely, courts have no authority to determine threshold issues of arbitrability*** or the scope of an arbitrator's jurisdiction." In the Matter of the Arbitration between The Hartford Insurance Company and Henderson Martin, et al., 16 A.D.3d 149, 150, 791 N.Y.S.2d 83, 85 (App. Div. 2005) (emphasis added). "Having failed to seek a stay of arbitration within the 20-day period, the carrier may not now object to arbitration under the terms demanded." In the

Matter of Aetna Casualty & Surety Company v. Jones, 188 A.D.2d 597, 598, 591 N.Y.S.2d 491, 492 (App. Div. 1992); *see also* In the Matter of Bonnie Pers et al. v. Hanover Insurance Company, 225 A.D.2d 313, 639 N.Y.S.2d 7 (App. Div. 1996).

This application of the principles of CPLR § 7503(c) is not new for the United States District Court for the Southern District of New York, as this Court recognized such in the case of Ferndale Corporation v. Schulman Urban Development Associates, 758 F. Supp. 861 (S.D.N.Y. 1990). In that case, this Court noted that

> Most of the arguments raised by Ferndale are untimely in light of the rules governing arbitration proceedings. Once a party receives notice of his adversary's intention to arbitrate, the proper procedure is to make an application by special proceeding to stay arbitration. N.Y. Civ. Prac. L. & R. 7502(a) (McKinney Supp. 1990); see N.Y. Civ. Prac. L. & R. 7503, commentary at 366 (McKinney 1980); D.M.C. Constr. Corp. v. A. Leo Nash Steel Corp., 70 A.D.2d 635, 416 N.Y.S.2d 649, 652 (2d Dept. 1979), *appeal dismissed*, 49 N.Y.2d 1040, 407 N.E.2d 480, 429 N.Y.S.2d 636 (1980). In this case, Schulman's attorney informed Ferndale in October 1989 that it was planning to seek arbitration. Although Ferndale clearly voiced its objection to having an arbitrator appointed this is not the equivalent of instituting a special proceeding to stay the arbitration as the statute requires and, thus, the arbitration properly proceeded.

Ferndale Corporation v. Schulman Urban Development Associates, 758 F. Supp. 861, 867-68 (S.D.N.Y. 1990).

In its February 11, 2008 Arbitration Demand, Local 731 specifically informed KCI that: "You have twenty (20) days from the date of this letter in which to file a stay of arbitration." (**Exhibit 3**). Again, this was consistent both with the language of the CBA and CPLR § 7503(c). Despite this requirement, and notice of such requirement, KCI did not move to stay the arbitration on the grounds of an issue of arbitrability until on or about April 28, 2008, approximately 75 days after notice. Because KCI is thus precluded from challenging the arbitrability of the dispute at hand, we respectfully submit that this Court should deny KCI's

application to stay and vacate the Arbitration, and should grant Local 731's cross-motion to compel arbitration pursuant to the CBA.

## POINT II

## THE ISSUE AS TO WHICH LOCAL 731 SEEKS ARBITRATION IS AN ISSUE WHICH, UNDER THE CBA, AND UNDER FEDERAL POLICY AND ESTABLISHED LAW, MUST BE SUBMITTED TO ARBITRATION

The CBA contains several provisions which seek to protect Local 731's members from having bargaining unit work contracted, or subcontracted, out from under them. One such provision provides:

> If the Employer covered by this collective bargaining agreement ***or any such principal owner or principal forms*** or acquires by purchase, merger or otherwise, an interest, whether by ownership, stock, equitable or managerial, in another company, corporation, partnership, or any other business entity, including joint venture and sole proprietorship, performing bargaining unit work within this jurisdiction, this collective bargaining agreement shall cover such other operation.

(**Exhibit 1**, pg 4) (emphasis added). A second such provision provides:

> The Employer shall not enter into a contract with any other person or entity, to perform bargaining unit work on the same job site, unless such other person or entity has signed a collective bargaining agreement with the Union on work traditionally performed by members of Local 731 or is a member of an Association which has signed a collective bargaining agreement with the Union and has authorized such Association to negotiate and execute a collective bargaining agreement on its behalf.

(**Exhibit 1**, pg 5).

This issue presented here calls for an interpretation of these provisions of the CBA, and pursuant to the parties' agreement, this is an interpretation that must be made by an arbitrator, and not by the court, inasmuch as the CBA expressly provides for arbitration "for construing the terms and provisions" of the CBA. (**Exhibit 1**, pg 10).

Contrary to KCI's argument, Local 731 is not relying on any "alter ego" theory. The Arbitration Demand was made to KCI (which admittedly is a party to the CBA), and seeks an arbitrator's determination with respect to specific provisions of the CBA. These facts distinguish this case from the decisions on which KCI relies. For example, in Bloomingdale's, Inc. v. Service Employees International Union, Local 32E, AFL-CIO, 1998 U.S.Dist. LEXIS 413 (S.D.N.Y. 1998), Bloomingdale's sought an order to vacate an arbitration award as "Bloomingdale's is not, and has never been, a signatory to the Agreement between Control and SEIU." Bloomingdale's, Inc. v. Service Employees International Union, Local 32E, AFL-CIO, 1998 U.S.Dist. LEXIS 413, at *2 (S.D.N.Y. 1998). In fact, one case cited by KCI, Vittoria Corporation v. New York Hotel and Motel Trades Council, 30 F. Supp. 2d 431 (S.D.N.Y. 1998), held that "[t]he alter ego doctrine is inapplicable . . . because the Council is seeking to compel arbitration from Vittoria Corporation, not Cipriani 55 Wall, L.L.P. Vittoria is a signatory to the "Me-Too Agreement", and thus should be compelled to comply with Article 26." Vittoria Corporation v. New York Hotel and Motel Trades Council, 30 F. Supp. 2d 431, 436 (S.D.N.Y. 1998).

When a collective bargaining agreement between the parties contains an arbitration clause, it has long been the federal policy to favor "settlement of disputes by the parties through the machinery of arbitration." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S. Ct. 1347, 1353 (1960). "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85, 80 S. Ct. 1347, 1354 (1960); see also Zubak v. Meyer, 1998 U.S. Dist. LEXIS 8843, *6-7 (S.D.N.Y. 1998); Star Pharmacy, Inc. v.

Roberts, 1977 U.S. Dist. LEXIS 13659, *8 (S.D.N.Y. 1977); and Directors Guild of America, Inc. v. National Broadcasting Company, Inc., 1976 U.S. Dist. LEXIS 14522, *4-5 (S.D.N.Y. 1979).

In the collective bargaining agreement at dispute in the case at hand, the arbitration clause provides that there should be arbitration

> for the purpose of settling disputes between any of the Employers and Local 731 or any of the Employers and any of the workers covered by this Agreement as to any claims of violation of this Agreement or of any dispute that may arise in connection therewith or for construing the terms and provisions thereof[.]

(**Exhibit 1**, pg 10).

KCI does not dispute that it is a party to the CBA; nor does KCI contend that the CBA expressly excludes the subject dispute from arbitration. Instead, KCI has cited the cases of A. Seltzer and Co., Inc. v. Livingston, 253 F. Supp. 509 (S.D.N.Y. 1966) and Sperry Systems Management v. Engineers Union, 371 F. Supp. 198 (S.D.N.Y. 1974), both of which are distinguishable from the case at hand.

In A. Seltzer and Co., Inc., the plaintiff sought relief from being subject to arbitration based on its contention that the contract was invalid regarding what the future contractual provisions will be. The Court found the collective bargaining agreement in that dispute to be valid, denying the plaintiff's motion. Likewise, in Sperry Systems Management, the Southern District of New York dealt with the contention that the arbitration was sought for a subject "'specifically excluded' from arbitration under the terms of the collective bargaining agreement." Sperry Systems Management v. Engineers Union, 371 F. Supp. 198, 201 (S.D.N.Y. 1974). No such contentions are made by KCI in the present case.

Denial of KCI's application, and granting Local 731's cross-motion to compel arbitration is consistent with the federal policy requiring that "[a]n order to arbitrate the particular grievance

should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S. Ct. 1347, 1353 (1960).

The Supreme Court of the United States, in United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S. Ct. 1343 (1960), recognized the federal policy, as shown in the following language of its decision:

> In our role of developing a meaningful body of law to govern the interpretation and enforcement of collective bargaining agreements, we think special heed should be given to the context in which collective bargaining agreements are negotiated and the purpose which they are intended to serve. . . . The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 567-68, 80 S. Ct. 1343, 1346 (1960); see also Eastern Cleaning Services, Inc. v. Service Employees International Union, 1980 U.S. Dist. LEXIS 10068, *9-10 (S.D.N.Y. 1980). "When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal." United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 569, 80 S. Ct. 1343, 1347 (1960).

The agreement here "is to submit all grievances to arbitration, not merely those which the court will deem meritorious." United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 568, 80 S. Ct. 1343, 1347 (1960). Accordingly, the federal policy should be

followed, and the court should not usurp the parties' agreement to have the dispute entrusted to an arbitrator, consistent with the CBA.

## CONCLUSION

For all the foregoing reasons, Local 731 respectfully requests that this Court should deny KCI's application to stay and vacate the Arbitration, and should enter an order granting Local 731's cross-motion, compelling arbitration pursuant to the CBA.

Respectfully submitted,

**BISCEGLIE & DEMARCO, LLC**

/s Angelo R. Bisceglie, Jr.
By: ______________________________
Angelo R. Bisceglie, Jr. (ARB-9251)
Attorneys for defendant Building, Concrete, Excavating & Common Laborers Union Local No. 731, of Greater New York
365 Rifle Camp Road
West Paterson, New Jersey 07424
(973) 742-8900